RONALD E. FAULK (State Bar No. 68325)
LAW OFFICES OF RONALD E. FAULK
655 North Central Avenue, Suite 1735
Glendale, California 91203
(818) 637-2003 Telephone
(818) 484-2570 Facsimile
Ref.lawfaulk@outlook.com

Attorney for Plaintiff LEONARD WARD

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEONARD WARD,<br>Plaintiff,<br>v.<br>CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION; R. JOHNSON, Individually and in his capacity as Asst Warden of Centinella Prison; and DOES 1 TO 100,<br>Defendants. | **CASE NO.: 5:16CV01582**<br><br>**NOTICE OF INELIGIBILITY TO PRACTICE LAW PER ATTACHED ORDER OF DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT** |

**TO THE HONORABLE DAVID T. BRISTOW, JUDGE MAGISTRATE AND ATTORNEYS OF RECORD:**

Please be advised that as of November 6, 2016, Ronald E. Faulk, Counsel for Plaintiff, Leonard Ward, has been deemed ineligible to practice law by Lucy Armendariz, Judge of the State Bar Court of California. See attached decision of State Bar Court, filed November 3, 2016. This decision renders Ronald E. Faulk unable to further represent the Plaintiff further in this matter.

All Plaintiff's papers and pleadings, in my possession, will be returned to Plaintiff, Leonard Ward, forthwith. It is respectfully requested that this court provide a reasonable time in which Plaintiff may obtain new counsel, and allow additional time for all Defendants to respond to Plaintiff's complaint.

DATED: November 15, 2016

LAW OFFICES OF RONALD E. FAULK

By: ______________________

Ronald E. Faulk

PUBLIC MATTER

FILED

NOV 03 2016

STATE BAR COURT CLERK'S OFFICE
SAN FRANCISCO

STATE BAR COURT OF CALIFORNIA

HEARING DEPARTMENT – LOS ANGELES

| | |
|---|---|
| In the Matter of<br><br>**RONALD EDWARD FAULK,**<br><br>**Member No. 68325,**<br><br>A Member of the State Bar. | Case No.: **16-O-10248-LMA**<br><br>**DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT** |

**Introduction**[1]

In this contested disciplinary matter, respondent Ronald Edward Faulk (Respondent) is charged with one count of misconduct alleging his failure to comply with disciplinary probation conditions. Having considered the facts and the law, as well as the mitigation and aggravation, the court finds Respondent culpable of the alleged misconduct and recommends that he be disbarred.

**Significant Procedural History**

The Office of Chief Trial Counsel of the State Bar of California (State Bar) initiated this proceeding by filing a notice of disciplinary charges (NDC) against Respondent on June 21, 2016. Respondent filed a response to the NDC on July 11, 2016.

On September 20, 2016, the parties filed an extensive Stipulation as to Facts and Admission of Documents. That same day, a one-day trial was held in this matter. The State Bar

[1] Unless otherwise indicated, all references to rules refer to the State Bar Rules of Professional Conduct. Furthermore, all statutory references are to the Business and Professions Code, unless otherwise indicated.

was represented by Deputy Trial Counsel Jamie Kim. Edward O. Lear represented Respondent. Upon the completion of trial, this matter was submitted for decision.

## Findings of Fact and Conclusions of Law

Respondent was admitted to the practice of law in California on April 26, 1976, and has been a member of the State Bar of California at all times since that date.

**Facts**

On March 3, 2005, the State Bar filed a notice of disciplinary charges against Respondent in case Nos. 04-O-14456 (04-O-14909; 04-O-15387). Respondent sought to participate in the Alternative Discipline Program (ADP). Three additional notices of disciplinary charges were subsequently filed against Respondent and consolidated.

In September 2007, the State Bar and Respondent entered into a Stipulation Re Facts and Conclusions of Law (the September 2007 Stipulation) in case Nos. 04-O-14456 (04-O-14909; 04-O-15387); 05-O-01313; 05-O-03005; and 06-O-11029 (Cons.). In this matter, Respondent stipulated that he committed 26 counts of misconduct in 6 client matters, most notably including the misappropriation of $198,452.80 from four clients.[2]

In November 2007, the State Bar Court issued a Confidential Statement of Alternative Dispositions regarding the discipline that would be recommended to the Supreme Court if Respondent successfully completed the ADP and the discipline that would be recommended if Respondent did not successfully complete, or was terminated from, the ADP. Respondent agreed to the possible dispositions and executed a Contract and Waiver for Participation in the State Bar Court's ADP. He was accepted and began participation in the ADP on March 6, 2008.

---

[2] The parties' Stipulation as to Facts and Admission of Documents filed in the present proceeding incorrectly stated that Respondent misappropriated $143,164 from three clients. This contradicts the parties' September 2007 Stipulation which states that Respondent misappropriated a total of $198,452.80 from four clients. (See Exhibit 27, pp. 16-27.)

On March 10, 2008, the State Bar Court issued an order enrolling Respondent inactive pursuant to Business and Professions Code section 6233, as part of the ADP, in case Nos. 04-O-14456, et al. This order became effective on August 15, 2008.

On April 1, 2011, Respondent filed a petition in the State Bar Court seeking reinstatement to active status and declaring his rehabilitation and present fitness to practice law. On April 25, 2011, the State Bar Court issued an order granting Respondent's petition to return to active status.

After successfully completing the ADP, on April 28, 2011, the State Bar Court issued a decision and order in case No. 04-O-14456, et al., recommending that Respondent be disciplined pursuant to the terms of the Confidential Statement of Alternative Dispositions.[3]

On August 25, 2011, the California Supreme Court issued an order in case No. S194066 (State Bar Court case Nos. 04-O-14456, et al.,) that Respondent be suspended for five years, stayed, and placed on probation for five years, including a 30-month actual suspension, with credit given for his inactive enrollment from August 15, 2008 through April 25, 2011.[4] Pursuant to this order, Respondent was required to comply with the following relevant terms and conditions of probation, among others:

> Respondent must submit written quarterly reports to the [Office of Probation of the State Bar of California (Office of Probation)] on each January 10, April 10, July 10, and October 10 of the period of probation. Under penalty of perjury, Respondent must state whether Respondent has complied with the State Bar Act, the Rules of Professional Conduct, and all conditions of probation during the preceding calendar quarter. Respondent must also state whether there are any proceedings pending against him in the State Bar Court and if so, the case number and current status of that proceeding. If the first report would cover less than thirty (30) days, that report must be submitted on the next quarter date, and cover the extended period. In addition to all quarterly reports, a final report, containing

---

[3] The Hearing Department filed a similar decision on December 17, 2010. On March 23, 2011, the Hearing Department issued an order vacating its December 17, 2010 decision. The court takes judicial notice of Respondent's State Bar disciplinary records.

[4] The Supreme Court's order became effective on September 24, 2011.

> the same information, is due no earlier than twenty (20) days before the last day of the period of probation and no later than the last day of the probation period.
>
> If Respondent possesses client funds at any time during the period covered by a required quarterly report, Respondent must file with each required report a certificate from a certified public accountant or other financial professional approved by the Office of Probation (accountant's certificate), certifying that: Respondent has maintained a bank account in a bank authorized to do business in the State of California, at a branch located within the State of California; that such account is designated as a "Trust Account" or "Clients' Funds Account"; and that Respondent has kept and maintained [a written ledger, a written journal, all bank statements, and monthly reconciliations].[5]
> (Exhibit 3, pp. 8-10.)

On September 8, 2011, the Office of Probation mailed a letter to Respondent at his membership records address, reminding him of his probation conditions. Specifically, the Office of Probation advised that if Respondent possessed any client funds, he must file an accountant's statement with his quarterly report. (Exhibit 3, pp. 2-3.) This letter was not returned as undeliverable.

Respondent's first quarterly report and accountant's certification were due on January 10, 2012. Respondent timely submitted his reports due on January 10, 2012.

On April 10, 2012, Respondent timely submitted his quarterly report. Each of Respondent's quarterly reports contained a section entitled "Protection of Client Funds." In most of Respondent's quarterly reports, he checked the box stating:

> I have possessed client funds, properties, and/or securities during the reporting period noted above or portion thereof, and have attached to this report a statement from a Certified Public Accountant or other financial professional approved by the Office of Probation, verifying compliance with the requirements of the Protection of Clients' Fund condition.

[5] The April 28, 2011 decision laid out in considerably more detail the information that needed to be maintained by Respondent. (See Exhibit 3, pp. 9-10.)

Although Respondent routinely checked this box, he did not attach his accountant's certificates to any of his quarterly reports. Instead, Respondent instructed his accountant to directly send the certificates to the Office of Probation.

On April 10, 2012 (the day Respondent's accountant's certificate was due), Respondent provided his CTA bank statements to his accountant, Barry Weiner (Weiner). (Exhibit 1011.) Weiner needed the CTA bank statements to prepare the accountant's certificate. Along with the CTA bank statements, Respondent sent a cover letter stating he forgot to send Weiner the CTA bank statements until that morning and apologizing for the "late request." The cover letter did not mention that the accountant's certificate was due that same day.

On April 30, 2012, Weiner submitted an accountant's certificate to the Office of Probation on Respondent's behalf. It was due on April 10, 2012, and was therefore 20 days late.

On July 10, 2012, Respondent submitted a quarterly report to the Office of Probation. The next day, the Office of Probation sent a letter to Respondent notifying him that the quarterly report was "rejected," as it was determined by the Office of Probation to be a copy, rather than an original. On July 18, 2012, Respondent mailed the Office of Probation a new quarterly report, which was filed by the Office of Probation on July 20, 2012. Along with his revised quarterly report, Respondent sent a letter apologizing for the mistake.

On July 23, 2012, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on July 10, 2012, and was therefore 13 days late.

On October 22, 2012, Respondent provided to Weiner the CTA bank statements pertaining to Respondent's October 10, 2012 accountant's certificate. These CTA bank

statements had previously been sent to Weiner on a timely basis, but were allegedly not received by Weiner's office.[6]

On November 9, 2012, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on October 10, 2012, and was therefore 30 days late. Along with the accountant's certificate, Weiner sent a letter stating that Respondent provided him the documentation in a timely fashion, but that Weiner was submitting the certificate late due to his own personal problems.

On January 30, 2013, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on January 10, 2013, and was therefore 20 days late.

On April 26, 2013, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on April 10, 2013, and was therefore 16 days late.

On August 19, 2013, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on July 10, 2013, and was therefore 40 days late. Weiner apologized for the delay and stated that there had been some miscommunication between him and Respondent.

Respondent timely submitted his quarterly reports due October 10, 2013 and January 10, 2014. In both of these reports, Respondent represented that he had been in possession of client funds during the reporting period. As was his norm, Respondent did not attach accountant's certificates to either of these quarterly reports.

---

[6] The parties stipulated to this fact. The court notes, however, that Exhibit 1012 makes no mention of the fact that Weiner was previously provided the CTA bank statements. In fact, the cover sheet contains a message from Respondent stating he forgot to send Weiner the CTA bank statements until that morning and apologizing for making a late request. That said, the court accepts this fact, as stipulated by the parties. (See *In the Matter of Rodriguez* (Review Dept. 1998) 3 Cal. State Bar Ct. Rptr. 884, 886 [unless parties' stipulation has been set aside, "it remains binding on the parties, and the facts recited in the stipulation are deemed established for purposes of this proceeding"].)

On January 29, 2014, the Office of Probation contacted Respondent by telephone and notified him that no accountant's certificates had been received since August 2013. Respondent represented that he had submitted the necessary documentation to his CPA and thought the accountant's certificates had been filed.

On February 3, 2014, Weiner submitted two accountant's certificates on Respondent's behalf. They were due on October 10, 2013 and January 10, 2014, and were therefore 116 and 24 days late, respectively.

On April 23, 2014, Weiner submitted an accountant's certificate on Respondent's behalf. It was due on April 10, 2014, and was therefore 13 days late.

Respondent timely submitted his quarterly reports due July 10 and October 10, 2014. In both of these reports, Respondent represented that he had been in possession of client funds during the reporting period. Again, Respondent did not attach accountant's certificates to either of these quarterly reports.

On October 16, 2014, the Office of Probation contacted Respondent once more by telephone and told him that the July and October 2014 accountant's certificates had not been received. Respondent advised the Office of Probation that he was not aware of this fact and that he would have the certificates sent to the Office of Probation as soon as possible.

On October 17, 2014, Weiner submitted two accountant's certificates on Respondent's behalf. They were due on July 10 and October 10, 2014, and were therefore 99 and 7 days late, respectively.

In December 2014, Respondent terminated Weiner. Respondent timely submitted his quarterly report due January 10, 2015. In this report, Respondent represented that he had been in possession of client funds during the reporting period, but he did not attach an accountant's certificate.

On April 13, 2015, Respondent submitted a quarterly report. It was due on April 10, 2015, and was therefore 3 days late. Respondent was in a trial on April 10, 2015, and had directed his administrative assistant to file the quarterly report personally. The administrative assistant failed to file the quarterly report on April 10, 2015. This was discovered on Monday, April 13, 2015, and the quarterly report was filed.

On April 15, 2015, the Office of Probation mailed Respondent a letter of his non-compliance with the terms of his probation. In particular, the Office of Probation noted that Respondent's April 2015 quarterly report had been submitted late and that the accountant's certificate, due on January 10, 2015, was still outstanding.

On April 24, 2015, Respondent advised the Office of Probation in a telephonic voice message that, as of December 2014, Weiner was no longer Respondent's accountant. Respondent stated that he had since spoken with multiple accountants, none of whom were willing to perform the work of providing accountant's certificates for Respondent's disciplinary probation. Respondent requested an accountant referral.

On April 27, 2015, the Office of Probation wrote to Respondent in response to his April 24, 2015 voice message. The Office of Probation advised that it was not in the practice of recommending accountants, nor would it extend due dates for probation compliance.

Respondent timely submitted his quarterly report due July 10, 2015. In this report, Respondent represented that he had been in possession of client funds during the reporting period, but he did not attach an accountant's certificate.

On September 3, 2015, the Office of Probation mailed Respondent a letter at his membership records address regarding his non-compliance with the terms of his probation. In this letter, the Office of Probation identified Respondent's 14 late or outstanding accountant certificates.

On May 2, 2016, Respondent submitted six accountant's certificates prepared by a new accountant. They were due on January 10, 2015; April 10, 2015; July 10, 2015; October 10, 2015; January 10, 2016; and April 10, 2016, and were therefore 478, 388, 297, 205, 113, and 22 days late, respectively.

All told, Respondent submitted one late quarterly report,[7] and seventeen late accountant's certificates between February 2012 and May 2016.[8] At no point did Respondent file a motion to modify or clarify any of his probation conditions.

**Conclusion of Law**

***Count One – § 6068, Subd. (k) [Failure to Comply with Probation]***

Section 6068, subdivision (k), provides that an attorney has a duty to comply with all conditions attached to any disciplinary probation. By willfully failing to timely submit his April 10, 2015 quarterly report[9] and accountant's certificates for April, July, and October 2012; January, April, July, and October 2013; and January, April, July, and October 2014,[10]

---

[7] As noted below, the court does not consider Respondent's July 10, 2012 quarterly report to be late.

[8] As noted below, the parties stipulated that Respondent filed seventeen late accountant's certificates, however, due to the way this matter was charged, the court only finds Respondent culpable of filing eleven accountant's certificates late.

[9] Although the parties stipulated that Respondent failed to timely file two quarterly reports, it has not been established by clear and convincing evidence that Respondent's July 10, 2012 quarterly report was late. Respondent timely submitted his July 10, 2012 quarterly report, but the Office of Probation unilaterally rejected it on procedural grounds. Respondent promptly remedied the procedural defect.

[10] The NDC, which was filed on June 21, 2016, alleged that Respondent failed to submit accountant's certificates for January 2015, July 2015, and January 2016. Approximately a month and a half before the NDC was filed, Respondent belatedly filed those certificates. At trial, the State Bar did not make a motion to conform to proof. Accordingly, it has not been established by clear and convincing evidence that Respondent failed to submit his January 2015, July 2015, and January 2016 accountant's certificates to the Office of Probation.

Respondent failed to comply with conditions attached to his disciplinary probation, in willful violation of section 6068, subdivision (k).[11]

Respondent argues that he delegated his duty to timely file the accountant's certificates to his CPA. This duty, however, was not to be delegated. The conditions of probation clearly stated that "Respondent must file with each [quarterly report] a certification from a certified public accountant or other financial professional …." (Emphasis added.) It was therefore Respondent's duty to monitor his CPA and insure that the accountant's certificates were being timely filed.

Even if the court were receptive to Respondent's argument that he did not realize his CPA was failing to timely file the certificates, Respondent was clearly put on notice of this fact when the Office of Probation communicated with him on three separate occasions – January 29, 2014; October 16, 2014; and April 15, 2015. Despite these repeated communications, Respondent made little to no effort to insure his subsequent accountant's certificates were timely submitted.

**Aggravation**[12]

The State Bar bears the burden of proving aggravating circumstances by clear and convincing evidence. (Std. 1.5.) The court finds the following with respect to aggravating circumstances.

**Prior Record of Discipline (Std. 1.5(a).)**

Respondent has been previously disciplined on two occasions. The court assigns substantial weight to Respondent's prior record of discipline.

---

[11] Although the parties stipulated that Respondent's April 2015, October 2015, and April 2016 accountant's certificates were filed late, this misconduct was not alleged in the NDC. Accordingly, the court declines to give any weight in culpability to these three late certificates.

[12] All references to standards (Std.) are to the Rules of Procedure of the State Bar, title IV, Standards for Attorney Sanctions for Professional Misconduct.

Effective September 3, 2002, Respondent was publicly reproved with conditions in State Bar Court case No. 00-O-12963. In that matter, Respondent stipulated to failing to promptly release a client file upon termination of employment in a single client matter.[13] In mitigation, Respondent had no prior record of discipline and cooperated with the State Bar. No aggravating circumstances were involved.

On August 25, 2011, the Supreme Court issued order No. S194066 (State Bar Court case Nos. 04-O-14456 (04-O-14909; 04-O-15387); 05-O-01313; 05-O-03005; 06-O-11029 (Cons.)) suspending Respondent from the practice of law for five years, stayed, with five years' probation, including a thirty-month actual suspension (with credit given for Respondent's inactive enrollment). In this matter, Respondent stipulated to culpability in six client matters. The stipulated misconduct included failing to maintain client funds in trust (four counts); misappropriation of $198,452.80 ($39,140.04 + $10,962.99 + $93,060.90 + $55,288.87) in client funds (four counts); failing to respond to client inquiries (three counts); improper withdrawal from employment (one count); failing to inform clients of significant developments (two counts); failing to perform legal services with competence (three counts); committing acts of moral turpitude by making misrepresentations to his clients (two counts); failing to obey court orders (two counts); improper representation of adverse interests (one count); failing to release a client file upon termination of employment (one count); and failing to cooperate in a disciplinary investigation (three counts).[14] In aggravation, Respondent had a prior record of discipline, his conduct involved trust account violations and dishonesty, and he caused significant harm to his clients. In addition, Respondent demonstrated indifference, failed to cooperate with the victims

---

[13] Respondent refused to release his client's file until his client paid him $3,000 for the costs of copying the file. Respondent did not make the file available for his client for over three years (1999-2002). He ultimately agreed not to charge his client the $3,000 copying charge.

[14] This misconduct occurred between 2000 and 2007.

of his misconduct and the State Bar, and committed multiple acts of misconduct. In mitigation, Respondent successfully completed the ADP.

**Multiple Acts (Std. 1.5(b).)**

Respondent's multiple acts of misconduct constitute an aggravating factor.

**Uncharged Misconduct (Std. 1.5(h).)**

Although evidence of uncharged misconduct may not be used as an independent ground of discipline, it may be considered in aggravation where the "evidence was elicited for the relevant purpose of inquiring into the cause of the charged misconduct [and where the finding of uncharged misconduct] was based on [the attorney's] own testimony . . . ." (*Edwards v. State Bar* (1990) 52 Cal.3d 28, 36.) The present case involves a different situation than *Edwards.* Here Respondent stipulated – rather than testified – to conduct constituting uncharged misconduct. Such conduct included failing to timely submit his January 2015, April 2015, July 2015, October 2015, January 2016, and April 2016 accountant's certificates to the Office of Probation.

The court concludes that the aforementioned uncharged misconduct was elicited for a relevant purpose and was based on Respondent's own representations. That said, the State Bar could have properly charged this misconduct in the NDC, as the State Bar was or should have been aware of these violations before the NDC was filed. Accordingly, the court assigns nominal weight in aggravation for Respondent's late filing of the six uncharged accountant's certificates.

**Mitigation**

Respondent bears the burden of proving mitigating circumstances by clear and convincing evidence. (Std. 1.6.) The court finds the following with regard to mitigating circumstances.

**Good Character (Std. 1.6(f).)**

Respondent provided character evidence from five witnesses.[15] Respondent's five character witnesses were all present or former clients.[16] Respondent's character witnesses attested to his honesty, professionalism, and good character. These witnesses demonstrated an understanding of Respondent's misconduct, but did not come from a wide-range of backgrounds. Consequently, Respondent's good character evidence warrants limited consideration in mitigation. (See *In the Matter of Myrdall* (Review Dept. 1995) 3 Cal. State Bar Ct. Rptr. 363, 387 [limited weight given to testimony of three attorneys and three clients because they did not constitute a broad range of references].)

**Volunteer and Pro Bono Work**

Respondent testified that in the past he has performed various community service and pro bono work, including serving as a judge pro tempore, acting as a mediator in Los Angeles County Superior Court, and being active in the California Trial Lawyers Association. Respondent's community service and pro bono work, however, have not been performed recently and were not established by evidence beyond Respondent's own testimony. (See *In the Matter of Shalant* (Review Dept. 2005) 4 Cal. State Bar Ct. Rptr. 829, 840 [limited mitigation weight for community service established only by respondent's testimony].) Consequently, Respondent's community service and pro bono work warrant limited consideration in mitigation.

**Cooperation with the State Bar (Std. 1.6(e).)**

Although the stipulated facts may not have been difficult to prove, Respondent cooperated with the State Bar by entering into a stipulation of facts, as well as culpability. (*In the Matter of Johnson* (Review Dept. 2000) 4 Cal. State Bar Ct. Rptr. 179, 190 [where

---

[15] One witness testified and the remaining four presented declarations.

[16] One of the witnesses also currently works for Respondent as an executive assistant.

appropriate, more extensive weight in mitigation is accorded those who admit to culpability as well as facts].) Accordingly, Respondent's cooperation with the State Bar warrants significant consideration in mitigation.

**Discussion**

The purpose of State Bar disciplinary proceedings is not to punish the attorney, but to protect the public, to preserve public confidence in the profession, and to maintain the highest possible professional standards for attorneys. (*Chadwick v. State Bar* (1989) 49 Cal.3d 103, 111; *Cooper v. State Bar* (1987) 43 Cal.3d 1016, 1025; Std. 1.1.)

In determining the level of discipline, the court looks first to the standards for guidance. (*Drociak v. State Bar* (1991) 52 Cal.3d 1085, 1090; *In the Matter of Koehler* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 615, 628). Second, the court looks to decisional law. (*Snyder v. State Bar* (1990) 49 Cal.3d 1302, 1310-1311; *In the Matter of Taylor* (Review Dept. 1991) 1 Cal. State Bar Ct. Rptr. 563, 580.)

Standard 1.7 provides that if aggravating or mitigating circumstances are found, they should be considered alone and in balance with any other aggravating or mitigating factors. In this case, the standards call for actual suspension as the presumed sanction. (Standard 2.14.)

Due to Respondent's prior record of discipline, the court also looks to standard 1.8(b) for guidance. Standard 1.8(b) states, in part, that unless the most compelling mitigation circumstances clearly predominate or the misconduct underlying the prior discipline occurred during the same time period as the current suspension, disbarment is appropriate when an attorney has two prior records of discipline and has been previously ordered to serve a period of actual suspension.

The standards, however, "do not mandate a specific discipline." (*In the Matter of Van Sickle* (Review Dept. 2006) 4 Cal. State Bar Ct. Rptr. 980, 994.) It has long been held that the

court is "not bound to follow the standards in talismanic fashion. As the final and independent arbiter of attorney discipline, [the Supreme Court is] permitted to temper the letter of the law with considerations peculiar to the offense and the offender." (*Howard v. State Bar* (1990) 51 Cal.3d 215, 221-222.) Yet, while the standards are not binding, they are entitled to great weight. (*In re Silverton* (2005) 36 Cal.4th 81, 92.)

In its pretrial statement, the State Bar recommended that Respondent be disbarred from the practice of law. In its closing statement at trial, the State Bar modified its position and recommended, among other things, that Respondent be actually suspended for three years. Respondent, on the other hand, argued in favor of a 60-day period of actual suspension.

The Supreme Court and Review Department have not historically applied standard 1.8(b) in a rigid fashion.[17] As the standard provides, the critical issue is whether the most compelling mitigating circumstances clearly predominate to warrant an exception to the severe penalty of disbarment. (See *Barnum v. State Bar* (1990) 52 Cal.3d 104, 113 [disbarment under former std. 1.7(b) imposed where no compelling mitigation]; compare *Arm v. State Bar* (1990) 50 Cal.3d 763, 778-779, 781 [disbarment under former std. 1.7(b) not imposed where compelling mitigation included lack of harm and no bad faith].)

Here, Respondent has intermittently committed misconduct over a 17-year period from 1999 to 2016. His most recent discipline was extremely egregious, involving 6 clients, 26 counts of misconduct, and $198,452.80 in misappropriated client funds. Though such a level of misconduct typically results in disbarment, Respondent was given a lengthy period of actual suspension and an opportunity for rehabilitation.

---

[17] Standard 1.8(b) was previously identified as former standard 1.7(b). Standard 1.8(b) is more limited than former standard 1.7(b), but is applicable here.

The present case, however, indicates to this court that Respondent is unwilling or unable to conform to his ethical responsibilities. The requirement that he provide quarterly accountant's certificates was undoubtedly ordered for the purpose of public protection, in light of the massive misappropriation involved in Respondent's prior discipline. Respondent should have been intimately involved with every aspect of his disciplinary probation, but instead chose to delegate some of his non-delegable duties.

While Respondent has demonstrated some mitigation, it does not come close to the level of "compelling mitigating circumstances" called for by standard 1.8(b). Further, Respondent's limited showing in mitigation was more than offset by the significant aggravation involved. Accordingly, this court sees no reason to recommend a level of discipline short of disbarment.

Therefore, having considered the nature and extent of the misconduct, the aggravating and mitigating circumstances, as well as the case law and standards, the court finds that Respondent's disbarment is necessary to protect the public, the courts, and the legal profession; to maintain high professional standards; and to preserve public confidence in the legal profession.

## Recommendations

It is recommended that respondent **Ronald Edward Faulk**, State Bar Number 68325, be disbarred from the practice of law in California and Respondent's name be stricken from the roll of attorneys.

**California Rules of Court, Rule 9.20**

It is further recommended that Respondent be ordered to comply with the requirements of rule 9.20 of the California Rules of Court, and to perform the acts specified in subdivisions (a) and (c) of that rule within 30 and 40 days, respectively, after the effective date of the Supreme Court order in this proceeding.

**Costs**

It is recommended that costs be awarded to the State Bar in accordance with Business and Professions Code section 6086.10, and are enforceable both as provided in Business and Professions Code section 6140.7 and as a money judgment.

**Order of Involuntary Inactive Enrollment**

Respondent is ordered transferred to involuntary inactive status pursuant to Business and Professions Code section 6007, subdivision (c)(4). Respondent's inactive enrollment will be effective three calendar days after this order is served by mail and will terminate upon the effective date of the Supreme Court's order imposing discipline herein, or as provided for by rule 5.111(D)(2) of the State Bar Rules of Procedure, or as otherwise ordered by the Supreme Court pursuant to its plenary jurisdiction.

Dated: November 3, 2016

LUCY ARMENDARIZ
Judge of the State Bar Court

## CERTIFICATE OF SERVICE

[Rules Proc. of State Bar; Rule 5.27(B); Code Civ. Proc., § 1013a(4)]

I am a Case Administrator of the State Bar Court of California. I am over the age of eighteen and not a party to the within proceeding. Pursuant to standard court practice, in the City and County of San Francisco, on November 3, 2016, I deposited a true copy of the following document(s):

**DECISION AND ORDER OF INVOLUNTARY INACTIVE ENROLLMENT**

in a sealed envelope for collection and mailing on that date as follows:

☒ by first-class mail, with postage thereon fully prepaid, through the United States Postal Service at San Francisco, California, addressed as follows:

EDWARD O. LEAR
CENTURY LAW GROUP LLP
5200 W CENTURY BLVD #345
LOS ANGELES, CA 90045

☒ by interoffice mail through a facility regularly maintained by the State Bar of California addressed as follows:

JAMIE J. KIM, Enforcement, Los Angeles

I hereby certify that the foregoing is true and correct. Executed in San Francisco, California, on November 3, 2016.

Bernadette Molina
Case Administrator
State Bar Court